IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ROGER LEE RUSSELL, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>ACTING COMMISSIONER OF )<br>SOCIAL SECURITY, )<br>)<br>Defendant. ) | Civil No. 14-4051-JAR |

## MEMORANDUM AND ORDER

This matter is before the Court for review of the final decision of Defendant Commissioner of Social Security denying Plaintiff Roger Russell's application for a period of disability and disability benefits under Title II of the Social Security Act,[1] as well as supplemental security income, under Title XVI of the Social Security Act.[2] Because the Court finds that Defendant Commissioner's findings are not supported by substantial evidence, the Court reverses the decision of Defendant Commissioner.

## I.    Procedural History

On April 7, 2011, Plaintiff protectively applied for a period of disability and disability insurance benefits and supplemental security income. His applications claimed an onset date of December 12, 2008; and he was last insured for disability insurance benefits on December 31, 2013. Plaintiff's applications were denied initially and upon reconsideration. Plaintiff timely requested a hearing before an administrative law judge ("ALJ"). After a hearing, the ALJ issued

---

[1] 42 U.S.C. §§ 401–434.

[2] 42 U.S.C. §§ 1381 *et seq.*

a decision finding that Plaintiff was not disabled; the Appeals Council denied Plaintiff's request for review of the ALJ's decision. Plaintiff then timely sought judicial review before this Court.

## II. Standard for Judicial Review

Judicial review under 42 U.S.C. § 405(g) is limited to whether Defendant's decision is supported by substantial evidence in the record as a whole and whether Defendant applied the correct legal standards.[3] The Tenth Circuit has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4] In the course of its review, the court may not re-weigh the evidence or substitute its judgment for that of Defendant.[5]

## III. Legal Standards and Analytical Framework

Under the Social Security Act, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."[6] An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."[7] The Secretary has established a five-step sequential evaluation process to determine whether a claimant is

---

[3] *See White v. Massanari*, 271 F.3d 1256, 1257 (10th Cir. 2001) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994)).

[4] *Id.* (quoting *Castellano*, 26 F.3d at 1028).

[5] *Id.*

[6] 42 U.S.C. § 423(d)(1)(A); § 416(i); § 1382c(a)(3)(A).

[7] *Id.* § 423(d)(2)(A); § 1382c(a)(3)(B).

disabled.[8]  If the ALJ determines the claimant is disabled or not disabled at any step along the way, the evaluation ends.[9]

Plaintiff does not challenge the ALJ's determination at step one that Plaintiff has not engaged in substantial gainful activity[10] since December 12, 2008, the alleged onset date.  Nor does Plaintiff challenge the ALJ's determination at step two that Plaintiff has medically "severe" impairments: degenerative disc disease of the lumbar spine, obesity, history of carpal tunnel— status post release surgery and dysthymia.  Plaintiff does not challenge the ALJ's determination at step three that none of his impairments or combination of impairments meet or equal a listing.

But Plaintiff challenges the ALJ's determinations at steps four and five, that Plaintiff has a residual functional capacity ("RFC") that enables him to perform work that exists in significant numbers in the economy in that Plaintiff can perform "light work," except he "is limited to frequent but not continuous use of his hands;" and Plaintiff "is capable of understanding, remembering and carrying out simple and intermediate workplace tasks."

## IV.   Discussion

Plaintiff contends that the ALJ erred in the determination of Plaintiff's RFC at step four by: (1) failing to state what weight he assigned to the opinions of physicians Mauldin, Timmerman and Silva and physical therapist Shawn Leggett; (2) failing to state what weight he assigned to the opinions of psychologists Mintz and Fantz; and (3) failing to properly evaluate Plaintiff's credibility regarding his subjective complaints of pain.  Plaintiff further contends that

---

[8]*Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1983).

[9]*Id.*

[10]*See Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988).

3

the ALJ consequentially erred at step five of the sequential evaluation process, in that his erroneous determination of RFC led him to improperly apply the Medical Vocational Guidelines grid in concluding that Plaintiff could perform work that exists in significant numbers in the national economy.

### A.     Evaluation of medical source opinions on physical limitations

Plaintiff contends the ALJ erred in not expressing what weight he accorded to the various opinions of Dr. Shari DeSilva, a treating physician; Dr. Charles Mauldin, a consulting physician who examined Plaintiff; Dr. Kyle Timmerman, a consulting physician who reviewed the medical records; and Shawn Leggett, a physical therapist who conducted an extensive functional capacity evaluation of Plaintiff.  Generally, the ALJ is to assign and weigh every medical opinion in the claimant's case record.[11]  Although the ALJ should state what weight he accords each opinion, if the court can ascertain from the ALJ's findings what weight we gave each opinion, there is no reversible error, for the court is able to meaningfully review the ALJ's decision.[12]

Because this Court can ascertain what weight the ALJ accorded each of these opinions, the Court finds no error in the ALJ's failure to expressly state the weight given each opinion. The Court ascertains that the ALJ gave Dr. DeSilva's opinion about carpal tunnel great weight; but he gave little or no weight to Dr. DeSilva's opinion about Plaintiff's other physical impairments and limitations.  The Court ascertains that the ALJ gave no weight to the opinion of Dr. Timmerman, nor the opinion of Shawn Leggett, both of which the ALJ found not persuasive.

---

[11]20 CFR § 404.1527(b) and (c); 20 CFR § 416.927(b) and (c).

[12]*Mays v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014); *Kruse v. Astrue*, 436 F. App'x 879, 883 (10th Cir. 2011).

The Court further ascertains that the ALJ gave great weight to the opinion of Dr. Mauldin, except for disregarding that part of Dr. Mauldin's opinion that pertained to Plaintiff's carpal tunnel; the ALJ clearly gave greater weight to the opinion of Dr. DeSilva about the carpal tunnel.

Given the Court's ability to ascertain the weight the ALJ gave each of these opinions, the next question is whether the ALJ properly evaluated these opinions.  The Court concludes that the ALJ erred in his evaluation of these opinions.  The record includes opinions from one of Plaintiff's treating physicians, Dr. DeSilva, concerning the nature and severity of his impairments.  Another treating physician, Dr. Yarosh, had referred Plaintiff to neurologist Dr. DeSilva, for examination and evaluation and diagnosis.  And, when there is such an opinion from a treating source, that opinion must be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and is not inconsistent with other substantial evidence in the record, but if it is "deficient in either respect, it is not entitled to controlling weight."[13]

Here, the ALJ did not give controlling weight to Dr. DeSilva's opinions that Plaintiff could only lift five pounds, carry ten pounds, push fifteen pounds and pull twelve pounds, for the ALJ concluded that Plaintiff had no exertional limitations, other than being limited to frequent but not continuous use of his hands, apparently because of the carpal tunnel.  One reason the ALJ expressed for discrediting Dr. DeSilva's opinion was that the objective medical evidence showed little in the way of actual injury, and did not show impairment as severe as Dr. DeSilva opined.  The ALJ pointed to a May 2011 MRI that showed L5-S1 degenerative disc disease with

---

[13]*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting 20 C.F.R. § 404.1527(d)(2) and citing SSR 96- 2p, 1996 WL 374188, at *5 (July 2, 1996)).

mild disc bulging, mild restrolisthesis and mild neuroforaminal narrowing, and a May 2012 MRI that also showed mild degenerative disc disease and mild spondylosis. While objective medical evidence is a valid consideration, as the ALJ expressly acknowledged, a claimant's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone,[14] such that the ALJ should also consider a number of other factors.

The ALJ also discredited Dr. DeSilva's opinion, finding that Plaintiff's treating physician, Dr. Yarosh, could not recommend him as a surgical candidate because his medical imagery showed an essentially negative finding. But the medical imagery showed positive findings, albeit mild degenerative disc disease and spondylosis. More importantly, the ALJ mischaracterized Dr. Yarosh's statement. Dr. Yarosh did not suggest that Plaintiff was not a surgical candidate because his impairment was not severe; rather, Dr. Yarosh stated that surgery would not improve Plaintiff's condition, and in fact, Plaintiff had obtained the maximum level of improvement possible. This of course, does not call into question the degree of severity; it highlights that medical options had been exhausted. The ALJ also failed to properly consider that Plaintiff had been on Tramadol and over-the-counter pain medications for years, had been wearing a lidoderm patch, that physical therapy caused him more pain rather than relief, and had gained no relief from repeated epidural and facet injections. And, Dr. DeSilva observed during her examination that Plaintiff tended to walk slowly and exhibited a number of pain behaviors. All of this also suggests that this was not a situation where the Plaintiff found relief through conservative measures; this was a case where Plaintiff found only limited relief, and his treating

---

[14] 20 CFR § 404.1529(c); 20 CFR § 416.929(c); SSR 96-7p, 1996 WL 374186 (July 2, 1996).

6

physicians had determined surgical or other interventions would provide no further relief.

While the ALJ appropriately considered that Plaintiff had been able to lift ten pounds during another test, when Dr. DeSilva found he could only lift five pounds, the ALJ erred in discrediting Dr. DeSilva's testing because "there is a question as to his effort in other testing." The ALJ was apparently referring to another of his findings, that the functional capacity evaluation and findings by physical therapist Shawn Leggett were not wholly reliable because Leggett had deemed the overall testing as "relatively reliable," and that some of the tests showed that Plaintiff had not made a consistent effort. But the ALJ apparently misunderstood the import of Shawn Leggett's findings. Leggett found that twenty-eight of the thirty-two tests administered to Plaintiff were reliable, for an overall validity of 81%. Leggett further noted under the heading "Notes/Recommendation" that "Mr. Russell was cooperative in attempting all tasks throughout the evaluation." Thus, the ALJ erred in finding that Plaintiff failed to make a consistent effort, and in characterizing the tests as largely not reliable, when the tests largely were reliable. Thus, the explanations that the ALJ gave for discrediting the opinions of Dr. DeSilva, a treating medical source, were largely erroneous, and the ALJ may thus have erred in failing to give Dr. DeSilva' opinions controlling weight.

Had the ALJ properly considered the findings and opinions of Shawn Leggett, who performed an extensive functional capacity evaluation of Plaintiff, that evidence may have given even more credence to Dr. DeSilva's findings and opinion. For Shawn Leggett concluded that Plaintiff could only carry ten pounds, push fifteen pounds and pull twelve pounds, and only occasionally sit, stand, kneel or climb stairs, squat, reach or bend; and that Plaintiff experienced an inability to sit or stand in one place for long periods secondary to increased tightness and

discomfort in his lower back.  These findings were the product of Shawn Leggett actually performing tests that measured Plaintiff's exertional abilities, not the product of a review of treatment records, or a review of Plaintiff's subjective complaints.  In that sense, Shawn Leggett's findings were objective medical evidence that the ALJ erroneously disregarded.

To be sure, as a physical therapist, Shawn Leggett is not an acceptable medical source whose opinions are entitled to the weight given an acceptable medical source.  The distinction is that while both "acceptable medical sources" and "other medical sources," like Leggett, can provide evidence to establish the severity of a claimant's impairment(s) and how it affects the claimant's ability to work,[15] only acceptable medical sources can provide a medical *opinion*,[16] and only acceptable medical sources can be considered treating sources.[17]  While Leggett's opinion that Plaintiff could perform less than sedentary physical demand level work above the waist and sedentary physical demand work below the waist, was not a medical opinion from an acceptable medical source, Leggett's findings from his examination of Plaintiff were objective medical evidence that the ALJ must consider as part of the longitudinal record.  On remand, the ALJ must consider Shawn Leggett's extensive findings as part of the longitudinal objective medical evidence that must be considered in determining what weight to give medical source opinions, and in determining Plaintiff's RFC.

Furthermore, on remand, the ALJ must evaluate Dr. DeSilva's opinion consistent with the following rules of law.  A treating physician's medical opinion is subject to a two-step

---

[15] 20 C.F.R. § 404.1513(a) (citing § 404.1508); 20 C.F.R. § 404.1513(d).

[16] SSR 06-03P, 2006 WL 2329939.

[17] 20 C.F.R. § 404.1502

inquiry. First, an ALJ must give such an opinion "controlling weight" if it is "'well-supported by medically acceptable clinical or laboratory diagnostic techniques'" and is not "'inconsistent with the other substantial evidence in the case record.'"[18] As the Tenth Circuit has explained,

> Even if a treating physician's medical opinion is not entitled to controlling weight, it is still entitled to deference; and at the second step of the analysis, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations, for this particular purpose, for the weight assigned.[19]

Those factors are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.[20]

Moreover, on remand, if the ALJ does not give Dr. DeSilva's opinion controlling weight, he must consider *all* other medical opinions in the record to see if they outweigh the reports of the treating physician.[21] This would include the opinion of Dr. Kyle Timmerman, a consulting physician who reviewed the medical records and opined that Plaintiff had a ten pound exertional limit with postural and manipulative limitations.

---

[18] *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir.2003) (quoting SSR 96–2p, 1996 WL 374188, at *2); see also 20 C.F.R. § 416.927(d)(2) (listing same criteria).

[19] *Krause v. Astrue*, 638 F.3d 1324, 1330 (10th Cir.2011) (citing *Watkins*, 350 F.3d at 1300–01).

[20] *Goatcher v. U.S. Dept. of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995) (citing 20 CFR § 404.1527(d)(2)-(6)).

[21] SSR 96-5P, 1996 WL 374183 (July 2, 1996).

While giving no weight to Dr. Timmerman's opinion, disregarding the objective medical evidence from Shawn Leggett's examination, and giving no controlling weight to Dr. DeSilva's opinion, for largely erroneous reasons, the ALJ gave great weight to the opinion of Dr. Charles Mauldin, a consulting physician who examined Plaintiff in July 2011 and opined that there was substantial medical evidence supporting some limitation in Plaintiff's functional capacity. The ALJ gave great weight to this opinion, despite the fact that there was medical evidence supporting a limitation in Plaintiff's functional capacity. The ALJ also apparently gave weight to Dr. Mauldin's opinion that Plaintiff's subjective complaints were the product of somatization.[22] Though the ALJ acknowledged that there was "no mental health expert diagnosis supporting that speculation," the ALJ nonetheless found "that there is a strong disconnect between the claimant's allegations of severity and the substantive record." To compound the ALJ's reliance upon Dr. Mauldin's speculation about Plaintiff's somatization, the ALJ expressly gave no weight to Dr. Timmerman's opinion and limited weight to Dr. DeSilva's opinion, because they were inconsistent with Dr. Mauldin's opinion, despite Dr. Mauldin's opinion being the product of an erroneous characterization of the medical evidence and speculation about Plaintiff's somatization and lack of credibility.

To be sure, Dr. Mauldin's objective findings from his examination of Plaintiff should be duly considered: that Plaintiff exhibited normal gait and strength in all four extremities, normal balance, sensation and coordination. But the ALJ should also consider Dr. Mauldin's objective findings that Plaintiff presented with marked muscle tenderness in the neck, shoulders, forearms,

---

[22]Merriam-Webster dictionary defines somatization as "conversion of a mental state (as depression or anxiety) into physical symptoms; also: the existence of physical bodily complaints in the absence of a known medical condition. www.merriam-webster.com/dictionary

low back and buttocks, and that in Dr. Mauldin's opinion, during the examination, Plaintiff's effort was "good."

On remand, the ALJ must properly evaluate the objective medical evidence, including Shawn Leggett's examination and findings, as well as the non-medical evidence, and properly evaluate Plaintiff's credibility in his subjective complaints of pain, in properly weighing and evaluating the opinions of these various physicians. In short, in his RFC, the ALJ found no exertional limitations, other than Plaintiff being limited to frequent, but not continuous use of his hands. In so doing, the ALJ did not properly explain and justify why he gave limited weight to the opinions of Dr. DeSilva and Dr. Timmerman that Plaintiff had exertional limitations, and the objective medical evidence, including Shawn Leggett's extensive examination that showed a number of exertional limitations.

### B.     Evaluation of medical source opinions on psychological limitations

While the ALJ did not properly evaluate the medical source opinions of the various medical sources who treated, examined or reviewed records concerning Plaintiff's physical impairments, the ALJ did properly evaluate the medical source opinions concerning Plaintiff's psychological impairments. While the ALJ did not expressly state what weight he accorded the opinions of Dr. Stanley Mintz, Ph.D. and Dr. Charles Fantz, Ph.D., it is apparent that he accorded great weight to Dr. Mintz's opinions, which he found "persuasive," and no weight to Dr. Fantz's opinion, which he found "not persuasive." For the reasons discussed above, the Court finds no error in the ALJ's attribution of weight to these two psychologist's opinions. Moreover, the Court finds that the ALJ's evaluation of these two opinions was proper, for the

ALJ obviously applied the *Goatcher* factors,[23] and accurately characterized the evidence in his evaluation. The ALJ properly discredited the opinion of Dr. Fantz, who reviewed the examination records of Dr. Mintz, and opined that Plaintiff had moderate difficulties with social functioning and should have only minimal contact with the general public. For, as the ALJ found, there was no evidence to support that opinion in the record, and Dr. Fantz utterly failed to explain the basis for his opinion.

At the same time, the ALJ properly credited the opinions of Dr. Mintz, who examined Plaintiff in December 2011, that Plaintiff had the ability to focus on simple and intermediate, but not complicated tasks, that Plaintiff has no problems with memory, and that Plaintiff's concentration may be limited when he is pain. As the ALJ found, Plaintiff had no history of mental health treatment, therapy or prescribed medication, such that the only medical evidence available was Dr. Mintz's comprehensive examination. And, that examination found that although Plaintiff suffered from depression, his depression was not disabling, did not preclude his interaction with potential co-workers and supervisors, and at most, his level of concentration was likely compromised by his level of pain. Moreover, Dr. Mintz scored Plaintiff's GAF at 58, which is indicative of moderate psychological impairment. And, Plaintiff did not give Dr. Mintz any specific description of his depressive symptoms, but only generically stated that he was depressed, without evidence "any showing of symptomology." From the Court's review of the record, the Court concludes that there is no other medical or non-medical evidence that precludes the conclusion that there is substantial evidence supporting the ALJ giving credit to Dr. Mintz's opinion and substantial evidence supporting the ALJ's determination of Plaintiff's mental RFC.

---

[23]*Goatcher*, 52 F.3d at 290.

Accordingly, upon remand, the Commissioner need not revisit this issue.

### C. Evaluation of credibility of subjective complaints of pain

Not only did the ALJ err in evaluating the opinions of the various medical sources regarding Plaintiff's physical limitations, his evaluation of them was impaired by certain errors he made in evaluating the credibility of Plaintiff's subjective complaints of pain. In evaluating a claimant's subjective complaints of pain, the ALJ is to employ a two-step process, as delineated in *Luna v. Bowen*,[24] to first consider whether Plaintiff has established a pain-producing impairment by objective medical evidence, and if so, to determine whether there is a loose nexus between the proven impairment and Plaintiff's subjective allegations of pain.[25] Here, the ALJ properly found that Plaintiff had established that his impairments are pain producing and that there is such a nexus with his subjective allegations of pain. As the ALJ acknowledged, "the claimant's medically determinable impairments could be reasonably expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."

The ALJ must consider all of the evidence, objective and subjective, in determining the credibility of Plaintiff's subjective complaints about the severity of the pain,[26] using these factors:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities,

---

[24] 834 F.2d 161, 163–164 (10th Cir.1987).

[25] *Id.*

[26] *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993)(citing *Luna v. Bowen*, 834 F.2d 161 (10th Cir.1987)).

> subjective measures of credibility that are peculiarly within the
> judgment of the ALJ, the motivation and relationship between the
> claimant and other witnesses, and the consistency or compatibility
> of nonmedical testimony with objective medical evidence.[27]

Here, the ALJ erred in his findings concerning several of these factors. The ALJ found that Plaintiff had no history of pain management beyond Tramadol and over-the-counter pain medicines and that there was no consistent use of injections, no physical therapy and no use of a TENS unit. But Plaintiff had a long course of treatment with not only Tramadol, which Plaintiff used regularly since 2007, as well as ibuprofen, but he also was prescribed and used a lidoderm pain patch. And, the treatment notes reflect that physical therapy was tried but discontinued because it caused Plaintiff more pain, and that Plaintiff received multiple epidural and facet injections that did not give him any relief.

The ALJ also erred in relying upon the lack of surgery as evidence that Plaintiff needed only conservative pain management. For Dr. Yarosh, one of his treating physicians noted several times that she did not recommend surgery because she did not think it would help Plaintiff, and further, that Plaintiff had reached his maximum level of improvement. In other words, no further medical intervention would help Plaintiff improve.

The ALJ also erred in evaluating Plaintiff's activities of daily living, finding that Plaintiff could drive, shop, and socialize, while ignoring the evidence that Plaintiff shopped only as necessary and no more than once a month for a fifteen minute interval; that Plaintiff drove only short distances; and that Plaintiff socialized only twice a month. The ALJ also focused on the testimony that Plaintiff helped his wife raise their two grandchildren, ignoring the evidence that

---

[27]*Id.* at 1489 (citations omitted).

his assistance was minimal. The ALJ also indicated that he disbelieved Plaintiff's testimony that paying bills caused him pain, while apparently ignoring Plaintiff's explanation that paying bills is stressful and that stress increases his pain.

On remand, the ALJ should reconsider his findings on the *Luna* factors in light of this, and all of the evidence, keeping in mind that the sporadic performance of household tasks does not establish that a person is capable of engaging in substantial gainful activity.[28]

## V.     Conclusion

For these reasons, the Court concludes that the ALJ erred in assessing Plaintiff's physical RFC. Accordingly, the decision of the Commissioner will be reversed and remanded. On remand, the Commissioner must weigh and evaluate the opinions of the acceptable medical sources, and all medical evidence, including the objective medical evidence from physical therapist Shawn Leggett. The Commissioner must also properly evaluate the credibility of Plaintiff's subjective complaints of pain.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's decision denying Plaintiff disability benefits is **REVERSED AND REMANDED.**

**IT IS SO ORDERED.**

Dated: July 27, 2015

 S/ Julie A. Robinson

JULIE A. ROBINSON

UNITED STATES DISTRICT JUDGE

---

[28] *Id.* at 1490 (citations omitted).